UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x

MURASHEA BOVELL,

                        Plaintiff,                        **OPINION AND ORDER**

        -against-                          21-cv-1621 (AEK)

CITY OF MOUNT VERNON,
NEW YORK, *et al.*,

                        Defendants.
--------------------------------------------------------------x

**THE HONORABLE ANDREW E. KRAUSE, U.S.M.J.[1]**

      Plaintiff Murashea Bovell ("Plaintiff") brings this action against Defendants City of

Mount Vernon, New York; Glenn Scott, individually and in his official capacity as Police

Commissioner of the Mount Vernon Police Department ("MVPD"); Shawn Harris, individually

and in his official capacity as former Police Commissioner of the MVPD; Richton Ziadie,

individually and in his official capacity as Chief of the MVPD; Gregory Addison, individually

and in his official capacity within the MVPD; Michael Kushnir, individually and in his official

capacity within the MVPD; Angeles Cheung, individually and in her official capacity within the

MVPD; and Gary Ishkanian, individually and in his official capacity within the MVPD

(collectively, "Defendants").  Plaintiff originally asserted claims against the individual

defendants and/or the City of Mount Vernon for racial discrimination and retaliation in violation

of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the New York

Human Rights Law ("NYHRL"), N.Y. Exec. Law § 296; violation of his Fourteenth Amendment

---

[1] The parties consented to this Court's jurisdiction for all purposes pursuant to 28 U.S.C.
§ 636(c) on August 5, 2022.  ECF No. 39.

right to equal protection; violation of his First Amendment right to free speech; disability

discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101

*et seq.*; and negligent infliction of emotional distress ("NIED").  ECF No. 2 ("Complaint" or

"Compl.").  Trial in this case is scheduled to take place during the weeks of July 17 and July 24,

2023.  ECF No. 72.  Currently before the Court are the parties' motions *in limine*.  ECF Nos. 53,

60.  The Court's rulings on the motions are set forth below.

## BACKGROUND

### I.    Factual Background

The following allegations are taken from the Complaint.  The Court assumes the parties'

familiarity with the 41-page, 291-paragraph Complaint, and does not attempt to summarize each

and every allegation here.  Rather, the Court includes this factual background section to focus on

allegations that are of particular relevance to the motions *in limine*.

Plaintiff, a black male, has been employed as a police officer in the MVPD since June

2007.  Compl. ¶¶ 58, 79.  On September 9, 2014, Plaintiff sustained several injuries, including a

knee injury, in the course of making an arrest.  *Id.* ¶ 150.  Due to his injuries, he remained on

leave from work until May 28, 2019, when he was restored to light duty.  *Id.* ¶ 207  On

November 2, 2015, Plaintiff filed a lawsuit in this District against the City of Mount Vernon and

other individuals in the MVPD, alleging discrimination and retaliation.  *Id.* ¶¶ 7, 59; *see* Dkt. No.

15 Civ. 8594 (CS) (S.D.N.Y.) (the "2015 Action").  The defendants in the 2015 Action were

granted summary judgment as to all but one claim, *see* Background Section II, *infra*; Plaintiff

proceeded to trial on the lone remaining claim, and a jury returned a verdict in favor of the City

of Mount Vernon in April 2018.  Compl. ¶ 59.  Meanwhile, in December 2017, Plaintiff filed a

confidential internal harassment complaint which "included reports of corruption, police

brutality and other serious misconduct members of the MVPD had committed," and forwarded the reports to the Mayor and City Council of the City of Mount Vernon. *Id.* ¶ 60. Plaintiff sent a second report in January 2018 after receiving no response to the earlier reports. *Id.*.

Plaintiff alleges that he was subjected to several incidents of retaliatory and/or discriminatory conduct in response to the 2015 Action and the December 2017 and January 2018 harassment complaints, including (1) an incident on April 11, 2018, in which Plaintiff went to the police department to renew his police identification card and was yelled at and humiliated by Defendant Addison in front of other officers, *id.* ¶¶ 172-78; (2) being subjected to unnecessary fitness for duty examinations in April 2018, being wrongly found psychologically unfit for duty in June 2018, wrongfully having his firearms removed and wrongfully being subjected to a civil action to suspend his pistol permit, and being wrongly forced to provide medical records in order to return to duty, *id.* ¶¶ 179-184, 188-207, 238-39; (3) an incident on or about April 15, 2018, in which Plaintiff was slandered by other members of the MVPD with false accusations that he committed crimes in his role as a police officer, *id.* ¶¶ 64, 78, 256-58[2]; and (4) incidents in July and August 2019, following Plaintiff's return to duty, in which a rubber rat was left on the floor near Plaintiff's locker (July 15), white paste was smeared on the combination lock on Plaintiff's locker (July 16), and Defendant Kushnir laughed and made comments about "rats" during roll call while motioning toward Plaintiff (August 7 and 8). *Id.* ¶¶ 212-32. Plaintiff also alleges more generally additional post-April 2018 retaliatory and/or discriminatory conduct in the form of Defendants' failure to promote Plaintiff to detective. *See id.* ¶¶ 64, 77, 253.

---

[2] Although none of the named individual Defendants is alleged to have made slanderous statements about Plaintiff, he alleges that "Defendants knew these allegations were false." Compl. ¶¶ 256-58.

## II.    Procedural History

As noted above, on November 2, 2015, Plaintiff filed the 2015 Action against the City of Mount Vernon and other individuals in the MVPD, none of whom are named defendants in this case.  *See* Dkt. No. 15 Civ. 8594 (CS) (S.D.N.Y.).  In the 2015 Action, Plaintiff brought claims under Title VII and the NYHRL against the City of Mount Vernon and/or individual defendants for retaliation and racial discrimination, as well as claims under 42 U.S.C. § 1983 for violation of Plaintiff's right to equal protection.  *See* ECF No. 54 ("Plitt Decl.") Ex. A.  In a ruling from the bench on January 31, 2018, the Honorable Cathy Seibel granted the defendants' motion for summary judgment as to (1) Plaintiff's Title VII discrimination claims against the City of Mount Vernon; (2) Plaintiff's Title VII retaliation claims against the individual defendants; (3) Plaintiff's Section 1983 equal protection claims against the individual defendants; and (4) Plaintiff's NYHRL race discrimination and retaliation claims against the City of Mount Vernon and the individual defendants.  Plitt Decl. Ex. B at 63.  Plaintiff was left with a single claim for retaliation under Title VII against the City of Mount Vernon based on alleged harassment in connection with New York General Municipal Law § 207-c benefits for the line-of-duty knee injury suffered by Plaintiff on September 9, 2014.  *Id.* at 16-19, 63.[3]  Plaintiff proceeded to trial on this one remaining claim, and after the jury returned a verdict in favor of the City of Mount Vernon, judgment was entered against Plaintiff.  *See* Docket Sheet, 15 Civ. 8594, Minute Entry dated 4/9/2018; Plitt Decl. Ex. C.

On May 31, 2018, Plaintiff filed a complaint against the MVPD with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination based upon race,

---

[3] General Municipal Law Section 207-c governs the provision of disability benefits to police officers injured in the line of duty.  N.Y. Gen. Mun. Law § 207-c.

color, and disability, and also alleging retaliation.  Plitt Decl. Ex. D.  This complaint later was

transferred to the New York State Division of Human Rights ("NYSDHR") for further

processing and investigation.  *Id.*  On June 11, 2019, the NYSDHR issued a "Determination and

Order After Investigation," which stated that the NYSDHR concluded that there was "NO

PROBABLE CAUSE to believe that [the MVPD] has engaged in or is engaging in the unlawful

discriminatory practice complained of."  Plitt Decl. Ex. E at 1.  The NYSDHR found

"insufficient evidence of a nexus between [the MVPD's] conduct and [Plaintiff's] disabilities

and race."  *Id.*; *see also id.* at 2 ("On this record, there is insufficient evidence to show that [the

MVPD's] conduct was motivated by unlawful and discriminatory animus related to [Plaintiff's]

race or disability.").  The NYSDHR further found that Plaintiff's claims of racial discrimination

were time-barred; that the record did not support Plaintiff's assertions of discrimination based on

Plaintiff's disabilities; and that Plaintiff's claims that the MVPD "retaliated against him by

cancelling his health insurance and failing to schedule a hearing to return to work are also

unsupported."  *Id.* at 2.  On November 24, 2020, the EEOC notified Plaintiff that it had "adopted

the findings of the state or local fair employment practices agency that investigated this charge."

Plitt Decl. Ex. F at 1.

Plaintiff filed this action on February 23, 2021.  ECF No. 1.  Plaintiff subsequently

voluntarily dismissed his Title VII claim against the individual Defendants and his claims for

disability discrimination under the ADA.  ECF Nos. 41, 44, 47.[4]

---

[4] The November 17, 2022 letter filed by Plaintiff states that he "does not intend to pursue
the fourth, fifth, tenth, and eleventh causes of action asserting violations under the Americans
with Disabilities Act."  ECF No. 47.  Unfortunately, the Complaint lists the "tenth cause of
action" twice, using identical language, to attempt to assert a claim against the City of Mount
Vernon for violation of the ADA.  The eleventh cause of action, as labeled in the Complaint, is
asserted against all Defendants for NIED.  Plaintiff's counsel clarified at a conference held on
January 5, 2023 that Plaintiff did not intend to withdraw his NIED claim.  Similarly, the fifth

The case is ready for trial on the remaining claims.  In anticipation of trial, on December 13, 2022, the parties filed their motions *in limine*.  ECF No. 53, 60.  Defendants filed their opposition to Plaintiff's motions *in limine* on December 20, 2022.  ECF No. 61.  Plaintiff filed his response to Defendants' motions *in limine* on December 22, 2022.  ECF No. 63.  A conference was held on January 5, 2023, at which the Court heard argument on the motions *in limine* and gave the parties until January 20, 2023 to file reply briefs.  *See* Docket Sheet, Minute Entry dated 1/5/2023.  Only Defendants filed a reply brief in further support of their motions *in limine*.  ECF No. 66.

## DISCUSSION

### I.  Legal Standard Governing Motions *in Limine*

"A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*."  *Uzhca v. Wal-Mart Stores, Inc.*, No. 17-cv-3850 (NSR), 2023 WL 2529186, at *5 (S.D.N.Y. Mar. 15, 2023) (quotation marks omitted).  "'The purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial.'"  *Id.* (quoting *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996)).  "Evidence challenged in a motion *in limine* should only be precluded when it is clearly inadmissible on all possible grounds."  *Id.* (quotation marks omitted).

---

cause of action is stated against the individual Defendants for racial discrimination under the NYHRL; despite the sloppy and confusing language in the November 17, 2022 letter, Plaintiff's claim for racial discrimination against the individual Defendants pursuant to the NYHRL has not been withdrawn.

II.     **Defendants' Motions** *in Limine*

      A.     **Motion Regarding Election of Remedies / Collateral Estoppel Effect of NYSDHR Decision (Motion No. 1)**

Defendants maintain that the NYSDHR's June 11, 2019 "no probable cause" determination should preclude Plaintiff from introducing any evidence or making any argument regarding any incidents alleged to have taken place before June 11, 2019.  ECF No. 55 ("Defs.' Mem.") at 8-12; ECF No. 66 ("Defs.' Reply").  This motion *in limine* is based on two separate assertions: (1) that the Court lacks subject-matter jurisdiction over Plaintiff's NYHRL claims under the election of remedies doctrine; and (2) that the NYSDHR decision should be given collateral estoppel effect with respect to Plaintiff's Title VII, Section 1983, and NYHRL claims.

          1.     **Election of Remedies Doctrine**

"[A] complainant seeking to bring claims pursuant to the NYSHRL . . . has two options: (1) the plaintiff may seek administrative review through the NYSDHR, or (2) the plaintiff may seek judicial review in state or federal court."  *Harris v. Oscar De La Renta, LLC*, No. 20-cv-9235 (JGK), 2022 WL 540659, at *3 (S.D.N.Y. Feb. 22, 2022).  As set forth in the NYHRL, "[a]ny person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages . . . and such other remedies as may be appropriate . . . unless such person had filed a complaint hereunder or with any local commission on human rights . . . ."  N.Y. Exec. Law § 297(9).  Once a claim pursuant to the NYHRL has been presented to the NYSDHR, it "may not be brought again as a plenary action in another court."  *York v. Ass'n of Bar of City of New York*, 286 F.3d 122, 127 (2d Cir. 2002).  However, an "exception to the election-of-remedies bar . . . was created for charges filed with the [Equal Employment Opportunity Commission ("EEOC")] and then referred by the EEOC to the NYSDHR pursuant to Title VII requirements."  *Id.* at 126 n.2.  "[T]he exception applies . . .

when a charge is filed first with the EEOC, which then files it by automatic referral with the NYSDHR."  *Id.*; *see also, e.g.*, *Forkin v. United Parcel Serv.*, No. 18-cv-3397 (MKB), 2020 WL 9816001, at *6 (E.D.N.Y. Nov. 10, 2020) (exception to the election of remedies doctrine "applies when a claim is filed directly with the EEOC rather than with the NYSDHR, and is only thereafter filed with the NYSDHR by the EEOC in accordance with Title VII requirements that all complaints filed with the EEOC be referred to the local agency" (cleaned up)); *Harewood v. New York City Dep't of Educ.*, No. 18-cv-5487 (KPF) (KHP), 2019 WL 3042486, at *11 (S.D.N.Y. May 8, 2019) (same), *adopted by* 2019 WL 2281277 (S.D.N.Y. May 29, 2019).

Here, there is no dispute that Plaintiff filed his complaint with the EEOC, and the EEOC then transferred it to the NYSDHR.  *See* Plitt Decl. Ex. D at 1.  As part of the process of transferring Plaintiff's complaint from the federal to the state agency, a standard form NYSDHR complaint appears to have been prepared for Plaintiff's review, with the EEOC charge documentation attached; Plaintiff then executed the document, which authorized the NYSDHR to accept the complaint on behalf of the EEOC.  *See id.*("Your complaint, originally filed with the . . . (EEOC), has been transferred to the [NYSDHR] for complaint filing and further processing and investigation.  If you consent to the transfer, please **sign and notarize** the Division complaint cover page with the EEOC charge attached and return it to the Division to begin the investigation process.") (emphasis in original) & 5 (notarized signature page). Plaintiff's "consent" to the transfer from the EEOC to the NYSDHR does not alter the fact that he chose to file his complaint in the first instance with the EEOC; indeed, it is not clear what would have become of Plaintiff's complaint of discrimination if he had not "agreed" to the transfer to the state agency.  In their separately filed pretrial memorandum, Defendants urge this Court to "decline to exercise pendent jurisdiction" over Plaintiff's NYHRL claims, citing *Scott v.*

8

*Carter-Wallace, Inc.*, 147 A.D.2d 33 (1st Dep't), *appeal dismissed*, 75 N.Y.2d 764 (1989). *See* ECF No. 64 at 8-9. But *Scott* "was effectively overruled by the New York State Legislature when it amended [N.Y. Exec. Law] § 297(9) such that the filing of a complaint with the EEOC which is ultimately referred to the NYDHR does not constitute an election of remedies." *Bullock v. Presbyterian Hosp. in City of New York*, No. 95-cv-3928 (JSM), 1996 WL 328740, at *2 (S.D.N.Y. June 13, 1996); *see* N.Y. Exec. Law § 297(9) ("A complaint filed by the equal employment opportunity commission to comply with the requirements of 42 U.S.C. § 2000e–5(c) . . . shall not constitute the filing of a complaint within the meaning of this subdivision.").

In short, Plaintiff's clear decision to file his complaint of discrimination with the EEOC on May 31, 2018 places this matter squarely within the exception to the election of remedies doctrine. Notably, even after having been prompted on this issue by the Court at the January 5, 2023 conference, Defendants offered no argument to the contrary in their reply brief in support of their motions *in limine*. For all of these reasons, Plaintiff's NYHRL claims are not barred by the election of remedies doctrine, and this aspect of Defendants' first motion in *limine* is DENIED.

### 2.   Collateral Estoppel Effect of NYSDHR Decision

"Under either federal law or New York State law, collateral estoppel, or issue preclusion, bars the relitigation of an issue that was raised, litigated, and actually decided by a judgment in a prior proceeding, regardless of whether the two suits are based on the same cause of action." *Postlewaite v. McGraw-Hill*, 333 F.3d 42, 48 (2d Cir. 2003).

As an initial matter, Defendants' argument that the June 11, 2019 NYSDHR decision bars Plaintiff from pursuing his Title VII claims in federal court must be rejected. For certain federal civil rights claims, including claims brought pursuant to Title VII, a court will only give

preclusive effect to a state agency's administrative findings if those findings have been judicially reviewed. *Ferraro v. New York City Dep't of Educ.*, 752 F. App'x 70, 73 (2d Cir. 2018) (summary order). Because there was no state court review of the June 11, 2019 NYSDHR decision, that decision cannot have any preclusive effect on Plaintiff's Title VII claims in this action.

For collateral estoppel to apply to the NYSDHR decision with respect to Plaintiff's Section 1983 and NYHRL claims, "there must be an 'identity of issue which has necessarily been decided in the prior action and is decisive of the present action,' and the party to be estopped must have had a 'full and fair opportunity to contest the decision now said to be controlling.'" *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 730 (2d Cir. 2001) (quoting *Schwartz v. Pub. Adm'r,* 24 N.Y.2d 65, 71 (1969)). "The burden of proving identity of the issue rests on the proponent of collateral estoppel, while the opponent bears the burden of proving that he or she did not have a full and fair opportunity to litigate the issue." *Id.* (citing *Schwartz,* 24 N.Y.2d at 73).

Defendants maintain that there is an identity of issues between the allegations in Plaintiff's EEOC complaint, which was transferred to the NYSDHR, and the instant action. *See* Defs.' Mem. at 11-12. Similar to the Complaint in this matter, Plaintiff's EEOC complaint mentions the April 2018 incident in which Plaintiff allegedly was prevented from renewing his police identification card, and the ongoing denial of medical benefits. *See* Plitt Decl. Ex. D. Moreover, the NYSDHR decision includes consideration of additional allegations which also have been made here, such as alleged retaliatory conduct in the context of determining Plaintiff's fitness for duty and the revocation of his pistol permit. *See* Plitt Decl. Ex. E. Plaintiff does not challenge Defendants' contentions regarding the identity of issues between the NYSDHR

proceeding and this action.[5]  Rather, Plaintiff contends that he did not have a full and fair

opportunity to litigate those issues in the NYSDHR proceeding.  *See* ECF No. 63 ("Pl.'s Mem.")

at 8-12.

When a court is deciding whether a party had a full and fair opportunity to litigate an

issue,

> the various elements which make up the realities of litigation should be
> explored, including the size of the claim, the forum of the prior litigation,
> the use of initiative, the extent of the litigation, the competence and
> experience of counsel, the availability of new evidence, indications of a
> compromise verdict, differences in the applicable law and foreseeability of
> future litigation.

*Kosakow*, 274 F.3d at 734 (quotation marks omitted).  There are also "additional considerations

particular to determining the preclusive effect of administrative agency determinations,"

including "'whether the procedures used in the administrative proceeding assured that the

information presented to the agency were sufficient both quantitatively and qualitatively, so as to

permit confidence that the facts asserted were adequately tested, and that the issue was fully

aired.'"  *Id.* (quoting *Allied Chem. v. Niagara Mohawk Power Corp.,* 72 N.Y.2d 271, 276-77

(1988)).

The NYSDHR decision states that the agency's determination was arrived at "[a]fter

investigation, and following opportunity for review of related information and evidence by the

named parties[.]"  Plitt Decl. Ex. E at 1.  Plaintiff maintains, however, that he "was not

represented by counsel in his complaint to the EEOC (which was then transferred to the

NYSDHR), he was not afforded discovery, he was not permitted to confront witnesses against

him, [and] he was not afforded any type of hearing."  Pl.'s Mem. at 10 (citing ECF No. 63-1

---

[5] That said, there is no identity of issues with respect to Plaintiff's claims based on the
incidents in July and August 2019, which took place after the NYSDHR decision was issued.

("Bovell Decl.") ¶ 3).  He further contends that "it is unclear how each party was afforded an opportunity to submit . . . evidence for consideration by the [NYS]DHR and what exactly the [NYS]DHR reviewed in making its determination."  Pl.'s Mem. at 11.  While Plaintiff undoubtedly knows what evidence he submitted to the NYSDHR in connection with his complaint—even though he has not shared that information with the Court in connection with these motions—the lack of discovery, a hearing, or an opportunity to confront witnesses weighs against a finding of collateral estoppel.  *See Kosakow*, 274 F.3d at 735 (noting that plaintiff "did not receive any type of hearing wherein she could confront the witnesses against her" and "was not entitled to any discovery" before NYSDHR made its determination of no probable cause); *see also, e.g., Hemant Patel, M.D., P.C. v. Bandikatla,* No 18-cv-10227 (LGS), 2021 WL 4254977, at *3 (S.D.N.Y. Sept. 17, 2021) ("Collateral estoppel is inapplicable here because the record suggests that the [U.S. Department of Labor] determination was based on an investigation rather than a full hearing."); *Basak v. New York State Dep't of Health*, 9 F. Supp. 3d 383, 398 (S.D.N.Y. 2014) (no collateral estoppel where, among other things, the NYSDHR did not afford plaintiff either a hearing to confront witnesses or an opportunity for discovery).

The fact that Plaintiff was proceeding *pro se* in the NYSDHR proceeding, *see* Bovell Decl. ¶ 2, is also an important factor in determining whether he had a full and fair opportunity to litigate his claims in that forum.  *See Ramirez v. NYP Holdings, Inc.*, No. 18-cv-12058 (KPF), 2020 WL 470011, at *6 (S.D.N.Y. Jan. 29, 2020) ("This Court, and sister courts in this District, have similarly emphasized a plaintiff's *pro se* status."); *Kosakow*, 274 F.3d at 736 (because the plaintiff was acting *pro se*, "she could not have been expected or able to frame her evidence within the context of the specific legal issues.  Nor would she necessarily have known what facts were most relevant or persuasive in proving her case.").  While the mere fact that a complainant

represented himself or herself *pro se* during administrative proceedings "does not preclude a court from applying collateral estoppel," *Harmon v. Matarazzo*, No. 95-cv-3975 (FB), 1997 WL 94233, at *2 (E.D.N.Y. Feb. 27, 1997), *aff'd on other grounds*, 162 F.3d 1147 (2d Cir. 1998), this factor, along with the absence of any discovery, hearing, or opportunity for Plaintiff to confront witnesses during the NYSDHR proceeding, lead to the conclusion that Plaintiff did not have a full and fair opportunity during the administrative proceedings to litigate the claims that he has presented again in this case.  Moreover, Plaintiff's claims arising from the events of July and August 2019 were never part of the NYSDHR proceeding, and Plaintiff had no opportunity at all to litigate those aspects of the case in the earlier proceeding.  Accordingly, Plaintiff's claims are not barred by collateral estoppel as a result of the June 11, 2019 NYSDHR decision, and Plaintiff's first motion *in limine* is DENIED in its entirety.

### B.    Motions Regarding Temporal Scope of Plaintiff's Claims (Motions Nos. 2-4)

Three of Defendants' motions are devoted to the issue of the temporal scope of Plaintiff's remaining claims: (i) in Motion No. 2, Defendants contend that Plaintiff should not be allowed to introduce evidence of alleged discrimination and/or retaliation that occurred prior to April 2018; (ii) in Motion No. 3 Defendants assert that Plaintiff should not be permitted to relitigate any pre-2018 facts, legal theories, or claims that either were raised, or could have been raised, in the 2015 Action; and (iii) in Motion No. 4, Defendants maintain that Plaintiff should not be permitted to introduce evidence to support claims that are time-barred, either because any alleged racial discrimination took place too long before Plaintiff filed his May 2018 EEOC complaint, or took place after the filing of that EEOC complaint and Plaintiff never filed a subsequent complaint.  *See* Defs.' Mem. at 12-17 (Motions Nos. 2-4).

Plaintiff does not appear to dispute the limitations that Defendants are seeking to impose regarding evidence of alleged misconduct from prior to 2018.  In his opposition brief, Plaintiff specifically represents that he "does not intend to introduce any evidence beyond the 3 year statute of limitations applicable to his NYHRL claims (Counts 6 and 7), section 1983 claims (Counts 3, 8, and 9), and negligent infliction of emotional distress claim (Count 11)."  Pl's Mem. at 12.  At the January 5, 2023 conference, the Court ordered Plaintiff to "file a letter listing the incidents of alleged retaliatory conduct that form the basis for his claims and providing citations to the paragraphs in the Complaint in which the allegations of that retaliatory conduct may be found."  Docket Sheet, Minute Entry dated 1/5/2023.  Plaintiff filed his letter on January 20, 2023.  ECF No. 68 ("January 20 Letter").  As set forth in the January 20 Letter, six of the seven instances of alleged conduct that form the basis for Plaintiff's claims in this lawsuit took place in April 2018, July 2018, July 2019, and August 2019.[6]  Clearly, evidence regarding these specific acts will be from within the three-year period prior to the filing of the Complaint referenced by Plaintiff in his opposition filing.

One category of alleged conduct—"Defendants' continued refusal to promote Plaintiff to detective"—is not tied in the Complaint to a specific date, but is described as one of many alleged "[r]etaliatory actions" taken against Plaintiff after the filing of his prior lawsuit and official complaints.  *See* January 20 Letter at ¶ 2; Compl. ¶ 64.  But pursuant to the parameters that Plaintiff himself has accepted, any evidence regarding any alleged failure to promote must

---

[6] In the January 20 Letter, Plaintiff states that "[i]n or about April 2018, the Defendants permitted members of the MVPD to slander Plaintiff with false accusations that Plaintiff committed crimes in connection with his duties as a police officer."  January 20 Letter at 2.  Plaintiff cites three paragraphs in the Complaint in support of this assertion—paragraphs 64, 65, and 78—but it is paragraph 256 of the Complaint that connects the "slander" allegations to the specific date of on or about April 15, 2018.

be limited to the three-year period prior to the filing of the Complaint—*i.e.*, no earlier than February 24, 2018.  The allegation that Plaintiff should have been promoted to detective based on his prior investigative work from 2010 to 2013, *see* Compl. ¶ 255, for example, was specifically raised in the 2015 Action, *see* Dkt. No. 15-cv-8964 Compl. ¶¶ 20, 63-67, was among the claims that were disposed of at summary judgment, and cannot form the basis of a claim for failure to promote in the aftermath of the 2015 Action.

In short, there does not appear to be any dispute that the allegedly actionable conduct at issue here took place in 2018 and later, and that the evidence at trial should be limited to the period beginning in or about February 2018.  At trial the Court will enforce the parameters of the parties' apparent agreement.[7]  Defendants' arguments seeking to limit Plaintiff's allegations of misconduct from 2019 are addressed in the next section.  Accordingly, Defendants' motions are GRANTED IN PART AND DENIED IN PART.

C.     **Motion to Preclude Claims Based on the Failure to Exhaust Administrative Remedies (Motion No. 5)**

Defendants contend that Plaintiff's Title VII claims covering events from after May 31, 2018 should be dismissed due to Plaintiff's failure to exhaust administrative remedies, since Plaintiff never filed a complaint with the EEOC regarding those alleged incidents.  *See* Defs.'

---

[7] As discussed briefly at the January 5, 2023 conference, some limited amount of "context" will have to be provided to the jury so that the focus of the trial can be the alleged conduct from 2018 forward.  For example, Plaintiff asserts that the alleged April 2018 conduct at issue here was retaliatory, which means that Plaintiff will have to present evidence of the protected activity that supposedly prompted the alleged retaliation.  This will require either testimony or a stipulation regarding some set of events from before April 2018.  Prior to the next scheduled conference with the Court, the parties must meet and confer for at least one hour to discuss proposals for how to appropriately present this information in an orderly and targeted fashion, consistent with the parties' apparent agreement on the core principle that this case must be focused on what Plaintiff alleges happened in 2018 and afterwards.

Mem. at 16-17.[8]  But by failing to raise this argument until the eve of trial, Defendants have waived any administrative exhaustion defense.  "[The Second Circuit] has squarely held that failure to present a Title VII claim to the EEOC before filing suit in federal court 'is not a jurisdictional prerequisite, but only a precondition to bringing a Title VII action that can be waived by the parties or the court.'"  *Zarda v. Altitude Express, Inc.*, 883 F.3d 100, 110 n.4 (2d Cir. 2018) (*en banc*) (quoting *Francis v. City of New York*, 235 F.3d 763, 767 (2d Cir. 2000)), *aff'd sub nom. Bostock v. Clayton Cnty., Ga.*, 140 S. Ct. 1731 (2020); *see Fort Bend Cnty., Tex. v. Davis*, 139 S. Ct. 1843, 1849 (2019) (describing Title VII claim-processing rule as "mandatory," though not jurisdictional, and explaining that "an objection based on a mandatory claim-processing rule may be forfeited if the party asserting the rule waits too long to raise the point" (quotation marks omitted)).

Defendants concede, as they must, that they did not raise the issue of Plaintiff's failure to exhaust administrative remedies as an affirmative defense in their Answer, but nevertheless ask this Court to exercise discretion and "allow them to advance this defense now."  Defs.' Reply at 2.  The Court declines to do so.  *See, e.g., Grundstrom v. Carrier Coach, Inc.*, No. 13-cv-832-A, 2017 WL 8941207, *9 (W.D.N.Y. Mar. 7, 2017) ("the failure to raise noncompliance with Title VII's statutory scheme waives such prerequisite to suit"), *adopted by* 2018 WL 1911278 (W.D.N.Y. Apr. 23, 2018).  Accordingly, this motion is DENIED.

---

[8] Allegations regarding Plaintiff's fitness to return to duty and the revocation of his pistol permit, which are based on events that occurred over the period from April 2018 through May 2019, *see* Compl. ¶¶ 179-211, are, in fact, addressed in the NYSDHR's June 11, 2019 decision, even though particular events that took place after Plaintiff's initial filing with the EEOC on May 31, 2018 were not specifically referenced in that complaint.  *See* Plitt Decl. Ex. E.

### D.     Motion to Preclude Testimony of Other
Instances of Police Actions Generally (Motion No. 6)

Defendants broadly and vaguely caption their sixth motion *in limine* as one seeking to

preclude the introduction of evidence "about other instances of police actions generally."  Defs.'

Mem. of Law at 17.  In the body of that motion, Defendants request—somewhat more narrowly,

but still vaguely—that the Court "preclude Plaintiff from referring to other purported instances

of discrimination" by other, non-party police officers.  *Id.*  It is impossible for the Court to rule

on this motion without more information about what, precisely, Defendants are attempting to

preclude, or for what purpose Plaintiff might be attempting to introduce such information.  The

strict parameters regarding the time period relevant to Plaintiff's claims in this action, *see*

Section II.B., *supra*, may address this motion in part.  If Plaintiff intends to elicit testimony about

prior instances where non-party officers "at some other time allegedly violated the Constitutional

rights of Plaintiff or another person," Defs.' Mem. of Law at 17, Plaintiff should be prepared to

identify such incidents at the next pretrial conference with the Court so that the parties and the

Court may have a more informed discussion about this issue.  For now, given the lack of

information that has been presented to the Court, this motion is DENIED WITHOUT

PREJUDICE.

### E.     Motion to Preclude Evidence or Argument that Individual Defendants
Will Be Indemnified by the City of Mount Vernon (Motion No. 7)

Defendants seek to bar Plaintiff from presenting evidence or argument at trial that the

City of Mount Vernon might be required to indemnify the individual Defendants.  Defs.' Mem.

at 18.  Plaintiff does not oppose this motion.  Pl.'s Mem. at 6.  As numerous other courts have

found, "references to [a] City's potential indemnification obligations would serve no probative

value and potentially cause unwarranted prejudice."  *Nunez v. Diedrick*, No. 14-cv-4182 (RJS),

2017 WL 4350572, at *2 (S.D.N.Y. June 12, 2017) (citing cases).  Accordingly, this motion is
GRANTED.

      **F.**     **Motion to Preclude Inquiry into Defendants'**
                **Disciplinary History (Motion No. 8)**

      Defendants seek to bar Plaintiff from asking at trial about the disciplinary histories of the
individual Defendants and/or any civil rights actions which have been filed against them,
asserting that such questioning conflicts with Rule 404(b) of the Federal Rules of Evidence.
Defs.' Mem. at 18-19; *see* Fed. R. Evid. 404(b)(1) ("Evidence of any other . . . act is not
admissible to prove a person's character in order to show that on a particular occasion the person
acted in accordance with the character.").  "[D]isciplinary histories constitute prior act evidence
under Rule 404(b) and are inadmissible unless offered for some other relevant purpose besides
proving conformity with a character trait and after satisfying Rule 403's balancing test."
*Bermudez v. City of New York*, No. 15-cv-3240 (KAM) (RLM), 2019 WL 136633, at *7
(E.D.N.Y. Jan. 8, 2019); *see* Fed. R. Evid. 404(b)(2) (prior act evidence "may be admissible for
another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge,
identity, absence of mistake, or lack of accident").  "With respect to prior lawsuits brought
against defendants, the relevance of such evidence and the probative-prejudice balancing test
depends on the nature of the prior lawsuit, including whether the prior lawsuit is sufficiently
related to the instant case, and the purpose for which such evidence will be used at trial."
*Bermudez*, 2019 WL 136633, at *7.

      Again, the Court cannot rule on this motion without knowing more about what
information Plaintiff may attempt to use at trial, and for what purpose.  Plaintiff should be
prepared to provide additional information about this at the next pretrial conference with the
Court; it is critical to address as many potential issues as possible regarding disciplinary history

and prior lawsuits prior to trial so as to not waste they jury's time with extended sidebars or

lengthy discussions of these matters outside the presence of the jury.  For now, given the lack of

information that has been presented to the Court, this motion is DENIED WITHOUT

PREJUDICE.

### G.    Motion to Preclude Plaintiff from Suggesting a Damages Amount (Motion No. 9)

Defendants seek to bar Plaintiff from suggesting to the jury that he be awarded a specific

dollar amount in damages.  Defs.' Mem. at 19-20.  Plaintiff does not oppose this motion.  Pl.'s

Mem. at 6.  "[T]he determination of whether to allow a plaintiff to request a specific damages

amount from the jury is within the court's discretion."  *Bermudez*, 2019 WL 136633 at *10.

"Although the Second Circuit has not prohibited parties from suggesting particular damages

amounts to the jury, it has cautioned against this practice."  *Id.* (citing cases); *see also Nunez*,

2017 WL 4350572, at *2 ("[T]he Second Circuit has . . . expressed its 'disfavor' of 'specifying

target amounts for the jury to award' and has 'encourage[d]' district judges to 'bar' plaintiffs

from doing so in light of the strong likelihood of unfair prejudice." (quoting *Consorti v.*

*Armstrong World Indus., Inc.*, 72 F.3d 1003, 1016 (2d Cir. 1995), *vacated on other grounds sub*

*nom. Consorti v. Owens-Corning Fiberglas Corp.*, 518 U.S. 1031 (1996))).

Accordingly, while Plaintiff will be permitted to introduce evidence to support any claim

for economic damages, *see Bermudez*, 2019 WL 136633, at *10, Defendants' motion to preclude

Plaintiff from requesting a specific damages amount from the jury is GRANTED.

### H.    Motion to Reserve the Right to Object to all Recordings (Motion No. 10)

Defendants' final motion *in limine* is not a motion but rather an attempt to reserve

Defendants' right to object at trial to the admissibility of certain recordings if offered in evidence

by Plaintiff.  Defs.' Mem. at 20.  No such reservation of rights is necessary.  Defendants are free

to make appropriate objections as to any potential evidence that Plaintiff may seek to offer at trial, and the Court will rule on such objections as and when they are made.

## III.   Plaintiff's Motions *in Limine*

Plaintiff makes two motions seeking to bar Defendants from introducing (1) exhibits and/or witnesses that were neither produced nor disclosed during discovery; and (2) evidence "related to the veracity of Plaintiff's underlying complaints of sexism, racism, and corruption within the Mount Vernon Police Department."  *See* ECF No. 60 ("Pl.'s Mot.").

### A.   Motion to Preclude Exhibits and Witnesses

Rule 26(a) of the Federal Rules of Civil Procedure requires parties to disclose "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment[.]"  Fed. R. Civ. P.  26(a)(1)(A)(i).  It also requires parties to provide "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment[.]"  Fed. R. Civ. P.  26(a)(1)(A)(ii). Rule 26(e) provides that parties have a duty to supplement or correct their Rule 26(a) disclosures. Fed. R. Civ. P. 26(e).

Pursuant to Rule 37 of the Federal Rules of Civil Procedure, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  Courts consider four factors in evaluating whether to preclude testimony under Rule 37 for failure to disclose under Rule 26(a):

> (1) the party's explanation for the failure to comply with the discovery
> [obligation]; (2) the importance of the testimony of the precluded witness;
> (3) the prejudice suffered by the opposing party as a result of having to
> prepare to meet the new testimony; and (4) the possibility of a
> continuance.

*Chamberlain v. City of White Plains*, 960 F.3d 100, 117 (2d Cir. 2020).  The same standard

applies to the evaluation of whether to preclude the use of exhibits.  *See EMA Fin., LLC v. Joey*

*N.Y., Inc.*, No. 17-cv-9706 (VSB), 2021 WL 2822565, at *2 (S.D.N.Y. June 9, 2021).

Plaintiff seeks to bar Defendants from introducing at trial 54 of the 70 exhibits they

identified in their pretrial submission, purportedly because Defendants failed to disclose or

produce these documents during the course of the litigation.  Pl.'s Mot. at 4-7.  Plaintiff

maintains that the failure to disclose or produce these documents until the eve of trial is

unjustified and prejudicial.  *Id.* at 6-7.  Defendants respond that Plaintiff never before raised any

issue concerning discovery deficiencies, nor did his counsel raise any issue regarding exhibits

and/or witnesses designated by Defendants during preparation of the joint pretrial order

("JPTO") filed on December 13, 2022, and that the "extreme relief sought by Plaintiff should be

denied."  *See* ECF No. 61 ("Oxman Decl.").

As discussed during the January 5, 2023 conference, Defendants identified in their Rule

26(a) disclosures various categories of documents that they had in their possession, custody, or

control.  *See* ECF No. 60-2 ("Pl.'s Mot. Ex. B").  This put Plaintiff on notice that Defendants

might use these types of documents—including certain employment records, medical records and

reports, and records associated with the NYSDHR proceedings—as part of their case-in-chief,

and gave Plaintiff sufficient information to serve demands for production of these documents

pursuant to Rule 34 of the Federal Rules of Civil Procedure.  The Court therefore stated that

whether any of Defendants' trial exhibits should be precluded would depend on whether or not

those documents fell outside of the identified categories.  In their reply papers filed on January 20, 2023, Defendants stated that in their Rule 26(a) disclosures they "disclosed that they intended to introduce Plaintiff's Police Department personnel file and other Police Department records," and that "the overwhelming majority of [Defendants'] proposed exhibits were already in [Plaintiff's] possession and are listed as Plaintiff's exhibits in the December 13, 2022 Pre-Trial Order."  ECF No. 66-1 ("Buckley Decl.") ¶ 3; *see* Pl.'s Mot. Ex. B (Defendants identified as documents they might use "Plaintiff's employment records and additional documents from the Mount Vernon Police Department").  To the extent Plaintiff also has listed certain of these exhibits as exhibits on which he intends to rely at trial, Plaintiff has not articulated any basis for why Defendants cannot also make use of those documents.  Plaintiff also has not further articulated which of the disputed exhibits, in Plaintiff's view, fall outside of the categories identified by Defendants in their Rule 26(a) disclosures.  That said, for documents that Plaintiff has not identified for his own use, if the documents in question do not fall within the categories listed in Defendants' Rule 26(a) disclosures, the mere fact that Plaintiff may have received certain documents from the City of Mount Vernon at some point during the course of his employment with the MVPD is not sufficient for Plaintiff to be on notice that Defendants intended to rely on such documents in this litigation.

With respect to the trial witnesses who Defendants had not identified in their Rule 26(a) disclosures, Defendants' counsel stated at the January 5 conference that the newly-identified trial witnesses would be called to rebut Plaintiff's claims.  In their reply papers, Defendants add that of their 20 potential witnesses, (1) seven were listed in Defendants' Rule 26(a) disclosures, *see* Pl.'s Mot. Ex. B (based on the Court's comparison of the Rule 26(a) disclosures to the JPTO, however, there only appear to be five overlapping witnesses—Scott, Harris, Addison, Ishkanian,

and Cheung); (2) two were also on Plaintiff's witness list (based on the Court's comparison of the witness lists in the JPTO, however, there appear to be six overlapping witnesses—Scott, Harris, Ishkanian, Cheung, Addison, and Kushnir); (3) four were identified as witnesses who would testify regarding their performance evaluations of Plaintiff, which occurred prior to 2018 and may no longer be relevant (Wuttke, McEachin, Dellamura, and Curzio); (4) two were listed in response to Plaintiff's assertion in the parties' JPTO that Plaintiff's disclosures of the MVPD's "racist and corrupt practices kicked off an investigation by the [Westchester County] D.A.'s Office . . . [*see* ECF No. 56 at 4]" (Scarpino and Wagstaff); and (5) two are being dropped from Defendants' witness list (Lentini and Johnson) (these are plainly no longer in dispute).  Buckley Decl. ¶¶ 6-10.[9]  The ambiguity in the submissions makes it impossible for the Court to comprehensively assess at this time whether the witnesses in categories 1 and 2 will be permitted to testify.

Regarding the two witnesses related to the investigation of the MVPD by the Westchester County District Attorney's Office—former Westchester County District Attorney Anthony Scarpino and William Wagstaff, Esq., the City of Mount Vernon Special Prosecutor for Police Corruption—an evaluation of the four factors set forth in *Chamberlain* leads to the conclusion that their testimony must be precluded.  As noted above, the Complaint includes allegations concerning Plaintiff's complaints of corruption and other misconduct within the MVPD in December 2017 and January 2018.  Compl. ¶ 60.  Indeed, Defendants note that "Plaintiff has claimed Police Department corruption as the cornerstone of his whistleblowing and retaliation

---

[9] Defendants' reply papers do not address all of the witnesses identified by Plaintiff as not having been previously disclosed.  Specifically, Defendants provide no arguments regarding the inclusion in their witness list of Chief Marcel Olifiers, Captain Michael Goldman, Sgt. Rucci, Mayor Shawyn Patterson-Howard, or Robert Ponzini, Esq.

claims." Buckley Decl. ¶ 8. Moreover, as discussed in Section III.B, *infra*, to the extent that Plaintiff asserts a claim for First Amendment retaliation based on his complaints of corruption in the MVPD, the veracity of Plaintiff's complaints is in issue. Defendants maintain that they first identified these witnesses as part of the submission of the December 13, 2022 JPTO because Plaintiff stated in that same document that his "disclosures of MVPD's racist and corrupt practices kicked off an investigation by the D.A.'s Office. . . ." *Id.* (quotation marks omitted). But given that Defendants were aware of Plaintiff's complaints of corruption from the outset of the litigation, this is not a plausible reason for Defendants' failure to list Scarpino and Wagstaff in their initial Rule 26(a) disclosures, or their ongoing failure to supplement those initial disclosures at any point during the pendency of the lawsuit. Accordingly, the first factor weighs against allowing these witnesses to testify at trial. *See Simon v. City of New York*, No. 14-cv-8391 (JMF), 2017 WL 57860, at *6 (S.D.N.Y. Jan. 5, 2017) (first factor "cuts heavily against [the proponent of the late-disclosed testimony], as he does not even attempt to proffer a legitimate explanation for his eleventh hour disclosure").

The second *Chamberlain* factor, in contrast, counsels in favor of allowing the testimony of Scarpino and Wagstaff. Defendants contend that the testimony of these witnesses is needed to counter the inference that the MVPD was corrupt because it was being investigated by the D.A.'s Office. Buckley Decl. ¶¶ 8-9. Stated differently, this testimony would give Defendants a means of addressing the issue of the veracity of Plaintiff's complaints of corruption which, in turn, is relevant to Defendants' defense against Plaintiff's First Amendment retaliation claim. That said, this potential testimony would not be dispositive as to the question of the truth or falsity of Plaintiff's allegations—charging decisions made after investigation by criminal prosecuting

24

authorities are based on a range of factors, and a decision not to charge is not necessarily tantamount to a declaration that no misconduct occurred.

With respect to the third factor, Plaintiff would be prejudiced if Scarpino and Wagstaff were permitted to testify because Plaintiff has not had an opportunity to seek discovery from them, let alone to follow up on any additional avenues for discovery that might have been generated from their depositions.  Courts have recognized that late disclosure of a witness in close proximity to trial "is plainly prejudicial" to the party against whom the testimony would be offered.  *EMA Fin., LLC*, 2021 WL 2822565, at \*2 (precluding testimony of witness identified "less than a month before trial" in case where trial had already been delayed substantially).  The same is true here—Plaintiff would be substantially prejudiced if Defendants were permitted to call these witnesses at trial after never having disclosed them previously.  Thus, the third factor weighs against allowing Scarpino and Wagstaff to testify.

Fourth, and finally, a continuance is not warranted.  The parties chose to forego both discovery and motion practice in this action and have been ready to go to trial for almost a year.  Had this issue been raised months earlier, there may have been an opportunity for discovery without disrupting the trial schedule.  At this point, however, with the revised JPTO due imminently, the Court will not force Plaintiff to take away from trial preparation time to complete depositions of witnesses who should have been identified properly years ago, and certainly will not further delay this trial.  The fourth factor favors exclusion.

Accordingly, Plaintiff's motion to preclude the testimony of Scarpino and Wagstaff is GRANTED.

* * * * * * * * * *

As to the remainder of this motion, in light of the Court's ruling regarding the temporal scope of Plaintiff's claims, *see* Section II.B, *supra*, and the aforementioned ambiguity in Defendants' submissions, it is unclear which exhibits and/or witnesses Defendants would now seek to offer at trial.  The parties must meet and confer in detail to prepare a revised JPTO, and that discussion must include individualized discussion of each disputed exhibit and each disputed witness.  Any party that continues to object to a particular exhibit or particular witness must indicate that objection and the basis for the objection in the revised JPTO, and the Court will make final determinations regarding those objections at the next pretrial conference.  Accordingly, because the Court is hopeful that further discussion, informed by the decisions on the motions *in limine*, will narrow the scope of the parties' disputes regarding these issues, the motion is GRANTED IN PART, AND DENIED IN PART WITHOUT PREJUDICE.

### B.      Motion to Preclude Evidence Related to the Veracity of Plaintiff's Underlying Complaints

The crux of Plaintiff's remaining claims in this action is the alleged retaliation that he suffered in response to his complaints of "sexism, racism, and corruption" in the MVPD.  Plaintiff maintains that "the results of the investigations into Plaintiff's complaint[s] are not germane to the retaliation Plaintiff experienced by the specific Defendants named in this action," Pl.'s Mot. at 9, and therefore seeks to bar Defendants from "introducing any witness testimony and any exhibits that touch upon the veracity of Plaintiff's protected activity (Plaintiff's report of sexism, racism, and corruption)," *id.* at 10.  Defendants do not address this motion in either their opposition or reply papers.

In the context of a Title VII retaliation claim based on a complaint of unlawful activity, "the plaintiff need not prove that his [or her] underlying complaint of discrimination had merit, but only that it was motivated by a good faith, reasonable belief that the underlying employment

practice was unlawful." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 24 (2d Cir. 2014) (cleaned up).  "Retaliation claims under the New York State Human Rights Law are generally governed by the same standards as federal claims under Title VII." *Id.* at 25 n.8 (cleaned up).  Accordingly, for purposes of the claims of retaliation under Title VII and the NYHRL, the veracity of Plaintiff's complaints is not in issue—Plaintiff need only demonstrate that he had a reasonable belief that the MVPD was violating anti-discrimination laws.

To establish a First Amendment retaliation claim under § 1983, "a plaintiff must show (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019) (quotation marks omitted).  "When the speaker is a public employee, [his or] her speech is protected when it involves a matter of public concern and [he or] she is speaking as a private citizen." *Oliver v. Penny*, No. 21-111, 2022 WL 2165814, at *2 (2d Cir. June 16, 2022) (summary order).  More specifically, "[w]hether public employee speech is protected from retaliation under the First Amendment entails two inquiries: (1) whether the employee spoke as a citizen on a matter of public concern and, if so, (2) whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." *Anderson v. Cahill*, 417 F. App'x 92, 94 (2d Cir. 2011) (summary order) (quotation marks omitted); *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006).  "False speech is still entitled to First Amendment protection, *as long as it is not made with knowledge or reckless disregard of its falsity*." *Anderson*, 417 F. App'x at 94 (emphasis added) (cleaned up); *Reuland v. Hynes*, 460 F.3d 409, 414 (2d Cir. 2006).  Therefore, for purposes of Plaintiff's First Amendment retaliation claims, the veracity of his complaints *is* in issue since Plaintiff's complaints of "sexism, racism,

and corruption" in the MVPD would not qualify as protected speech if they were false, and Plaintiff made them either knowing that they were false, or with reckless disregard for whether they were false.

Noting that proving the veracity of Plaintiff's allegations would create "a mini trial within the trial," Plaintiff states that "[u]pon conferring with opposing counsel, both parties believe the scope of the trial should be narrowed by the Court." Pl.'s Mot. at 10. But the parties do not propose a viable way for the Court do this if the parties insist on disputing whether Plaintiff's speech constituted protected activity. Defendants have not responded to this motion and have not otherwise stated that this issue is undisputed. Accordingly, this motion is DENIED.[10]

## CONCLUSION

For the reasons stated above, the parties' motions *in limine* are resolved as set forth herein. The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 53 and 60.

In light of the number of issues to be addressed by the parties as a result of this Opinion and Order, the deadline for the parties to file their revised JPTO is hereby extended again to May 26, 2023.

---

[10] One possibility for the parties to consider is to stipulate that Plaintiff made certain complaints and that Defendants do not concede the veracity of the complaints, but that Defendants are not asserting that Plaintiff made the complaints with knowledge or reckless disregard of their falsity. In other words, Defendants would not admit that Plaintiff's complaints are true, but also would effectively stipulate to the removal of the truth/falsity of the complaints as a defense, and would instead concentrate on defending against the retaliation claims in other ways. This, and other potential options for streamlining the presentation of evidence, will be addressed at the next pretrial conference.

The Court will hold an in-person conference on Thursday, June 1, 2023 at 3:00 p.m. in Courtroom 250 of the Honorable Charles L. Brieant Jr. Federal Building and Courthouse, 300 Quarropas Street, White Plains, New York 10601.

Dated: May 18, 2023
      White Plains, New York

**SO ORDERED.**

_____
ANDREW E. KRAUSE
United States Magistrate Judge